**FORM B104** (08/07)

2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false
     representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
     larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
     (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*

☐ 02-Other (e.g. other actions that would have been brought in state
     court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

**Other Relief Sought**

FORM B104 (08/07), page 2                                              2007 USBC, Central District of California

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 104 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party.**  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Geoffrey Mason Ely  (SBN 251370)
342 W. 5th St.
Oxnard, CA 93030
(805) 805-486-8300
(805) 805-486-8330
Attorney For: Debtor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In Re: MORALES, JAIME<br><br>                    Debtor,<br>_____ | ) CHAPTER 13<br>) Case No.: 10-10784-RR<br>)<br>) COMPLAINT BY DEBTORS<br>)<br>) TO: |
|     MORALES, JAIME<br><br>                 Plaintiff,<br><br>     vs.<br><br>     INDYMAC MORTGAGE SERVICES, A<br><br>DIVISION OF ONEWEST BANK, FSB.<br><br>                 Defendant<br>_____ | ) 1.) ESTABLISH THE VALUE OF THE<br>) DEBTOR'S RESIDENCE;<br>) 2.) DETERMINE THE AMOUNT AND<br>) EXTENT OF THE SECOND DEED OF<br>) TRUST IN FAVOR OF INDYMAC<br>) MORTGAGE SERVICES, A DIVISION<br>) OF ONEWEST BANK, FSB.; AND<br>) 3.) AVOID AND REMOVE THE LIEN<br>) OF THE SECOND TRUST DEED OF<br>) INDYMAC MORTGAGE SERVICES, A<br>) DIVISION OF ONEWEST BANK, FSB.<br>) |

PLAINTIFFS AND DEBTORS

hereby allege as follows:

**JURISDICTION / CORE PROCEEDING**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §157 and 1334, and the Standing Order of reference of the Chief Judge of the United States District Court for the Central District of California dated July 20, 1984. Plaintiffs are the Debtors in this matter and the complaint asserts causes of action owned by the plaintiffs.

2. This proceeding is a core proceeding. To the extent that this adversary proceeding is deemed a non-core proceeding, Plaintiffs and Debtors consent to the entry of a final order and judgment by this Bankruptcy Court.

3. Plaintiff Jaime Morales is residing in the Central District of California's Northern Division.

4. Defendant, INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB (hereinafter "INDYMAC"), is a corporation doing business in the Central District of California's Northern Division. Accordingly, venue is proper in the Central District of California's Northern Division.

5. Plaintiff filed this Chapter 13 proceeding on February 19, 2010.

6. ELIZABETH ROJAS is the duly appointed and qualified Chapter 13 Trustee in this case.

7. As reflected in the bankruptcy schedules filed herein, Plaintiff's primary residence is located at 3550 Madera Place Oxnard, CA  93033, (hereafter referred to as the "Property"). The legal description of the Property is attached hereto as Exhibit 1.
Plaintiff owns a 100% fee title interest in the Property.

<u>**FIRST CLAIM FOR RELIEF**</u>

<u>**TO DETERMINE THE EXTENT, VALIDITY AND PRIORITY OF THE SECOND**</u>

<u>**TRUST DEED OF DEFENDANT INDYMAC**</u>

8. Plaintiff reasserts, re-alleges and incorporates herein by reference each and every allegation contained in all the preceding paragraphs as though set forth in full.

9. Plaintiff estimates the value of his Property on Schedule A-Real Property at $275,028.00, (a true and correct copy of Schedule A is attached hereto as Exhibit 2). Plaintiff based this estimate of value of the Property on discussions with real estate professionals and their own knowledge of their own neighborhood and the asking and selling prices of comparable properties. Additionally, Plaintiff purchased an appraisal of the Property from A&R Appraisal Service, (a true and correct copy of which is attached hereto as Exhibit 3.

10. Defendant INDYMAC has not yet filed a claim in this proceeding but a copy of the mortgage statement dated 2/18/2010 shows a balance of 420,522.75, (a true and correct copy of that statement is attached hereto as Exhibit 4)

11. Section 506 of the Bankruptcy Code, 11 U.S. C. §506, Determination of Secured Status states:

> **(a)(1)** An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing

on such disposition or use or on a plan affecting such creditor's interest.

12. Although Chapter 13 generally permits the modification of the rights and holders of secured claims, an exception is carved out for those claims secured only by an interest in real property that is the debtor's principal residence. The Ninth Circuit, however, has established an exception to this exception. In the matter of <u>In re Zimmer</u>, 313 F.3d 1220 (9th Cir.2002), the Court explained, "a claim such as a mortgage is not a 'secured claim' to the extent that it exceeds the value of the property that secures it. … [N]ot every claim that is secured by a lien on property will be considered a 'secured claim'. Here it is plain that [the junior lienholder's] claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house." <u>*Id At 223.*</u> The Court concluded: "In order to give effect to the definitions of secured and unsecured claims under §506(a), we must conclude that the rights of a creditor holding only an unsecured claim [in the debtor's residence] may be modified under <u>§1332(b)(2)</u>." <u>*Id. At 1227*</u>.

13. As indicated above, the lien of INDYMAC secured by its First Deed of Trust on the Property has a balance of 420,522.75 as of February 18, 2010. That amount exceeds Plaintiff's estimate of the fair market value of the Property as set forth in Exhibit 2 by the same amount. Accordingly, the same amount the Second Trust Deed on the Property is wholly unsecured and may therefore be avoided and stripped.

WHEREFORE, Plaintiff's request that this honorable Court enter
judgment in favor of the Plaintiff as follows:

(a) Establishing that the value of Plaintiff's personal
residence is no more than $275,028.00;

(b) Determining that the claim of INDYMAC secured by its
Second Trust Deed is limited solely to an unsecured non-priority
claim to the extent that one is asserted at all;

(c) Holding that the Second Trust Deed of trust held by
INDYMAC on the Property is avoided in its entirety; and

(d) For such other and further relief as the Court may deem
appropriate.

Dated: March 31 , 2010

                              Law Office of Geoffrey Mason Ely
                                     342 W. 5th St.
                                  Oxnard, CA 93030


                              By:  _____

                                   Geoffrey Mason Ely
                                   Attorney For Plaintiff

**<u>EXHIBIT  1</u>**

Old Republic Title Company

ORDER # 2715001614-JT
APN 225-0-044-165

WHEN RECORDED MAIL TO

Name Jaime Morales
Street Address 3550 Madera Pl.
City Oxnard, CA 93030
State
Zip

RECORDING REQUESTED BY
OLD REPUBLIC TITLE COMPANY

20050124-0016976
Pages: 2   Fees: $604.00
01/24/2005 08:00:00 AM
T20050006083 IH
Ventura County Recorder
Philip J. Schmit

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is $594.00
(X) computed on full value of property conveyed, or
( ) computed on full value less of liens and encumbrances remaining at time of sale.
( ) Unincorporated area:   (X)   City of   Oxnard
( ) Realty not sold.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Antonio M. Rodriguez and Maria Angelica Rodriguez, also known as Angelica Rodriguez, husband and wife, as Joint Tenants

**hereby GRANT(S) to**
Jaime  Morales, a single man

that property in City of Oxnard, Ventura County, State of California, described as:
See "Exhibit A" attached hereto and made a part hereof.

Mail Tax Statements to   Grantee at address above

Date   January 14, 2005

STATE OF CALIFORNIA
COUNTY OF   Ventura

On   1-18-05   before me, the
undersigned, a Notary Public in and for said State, personally appeared
Antonio M Rodriguez +
maria Angelica Rodriguez

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are described to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

Name   Jennifer Trahan
(typed or printed)

FTGIS-140 8/94

Antonio M. Rodriguez

Maria Angelica Rodriguez

JENNIFER TRAHAN
Comm. # 1411819
NOTARY PUBLIC-CALIFORNIA
Ventura County
My Comm. Expires April 18, 2007

(This area for official notarial seal)

**MAIL TAX STATEMENT AS DIRECTED ABOVE**

EXHIBIT "A"

SAID LAND IS SITUATED IN THE COUNTY OF VENTURA, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 127, OF TRACT NO. 1340-2, IN THE CITY OF OXNARD, AS SHOWN ON A
MAP RECORDED IN BOOK 37, PAGE 45 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM, ALL MINERALS, OILS, GASES, AND OTHER HYDROCARBONS
BY WHATSOEVER NAME KNOWN, NOT OTHERWISE RESERVED, THAT MAY BE
WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED, WITHOUT,
HOWEVER, THE RIGHT TO DRILL, DIG OR MINE, THROUGH THE SURFACE
THEREOF, AS RESERVED IN DEEDS OF RECORD.

**EXHIBIT 2**

B6A (Official Form 6A) (12/07)

In re _____,     Case No. _____
            **Debtor**                                                        **(If known)**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate.  Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit.  If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."  If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim.  See Schedule D.  If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  | Total▶ |  |  |

(Report also on Summary of Schedules.)

**<u>EXHIBIT  3</u>**

## DECLARATION OF RICHARD R. HERRERA

I, Richard R. Herrera, would competently testify to the following if called to do so.

1.  I prepared and signed the attached appraisal, dated 2/11/2010, for the subject property located
    at 3550 Madera Place Oxnard, CA 93033

2.  My state appraisal license is  AR 02 878 3

3.  I personally inspected the property.

4.  I formed my opinion that the current fair market value of the subject property is $ 275,028.00
    and based that opinion on its condition, size and comparable sales in the area.

5.  I have been a licensed appraiser for  7  years.

6.  I work for A&R Appraisal Service Appraisal Company.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this  8th  day of March, 2010 at Oxnard, California.

Signed: _____
        Richard R. Herrera
        Appraiser

## Uniform Residential Appraisal Report

File #

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 3550 Madera place | City Oxnard | State Ca. | Zip Code 93033 |
| Borrower n/a | Owner of Public Record Morales | County Ventura |
| Legal Description Lot 127 of tract 1340 |
| Assessor's Parcel # 225-0-044-165 | Tax Year 09/10 | R.E. Taxes $ 3,145 |
| Neighborhood Name n/a | Map Reference 553-B3 | Census Tract 0047.05 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ n/a    ☐ PUD    HOA $ ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market value estimate
Lender/Client n/a    Address n/a, n/a/, n/a
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes  ☒ No
Report data source(s) used, offering price(s), and date(s).

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record?  ☐ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 99 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 235 Low 5 | 2-4 Unit 1 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 315 High 50 | Multi-Family 0 % |
| | | | | | 315 | Commercial 0 % |
| | | | | | 265 Pred. 25 | Other 0 % |

Neighborhood Boundaries   Neighborhood is bound by Ventura rd. to the west, Wooley rd. to the north, Oxnard blvd. to the east and Bard rd. to the south.
Neighborhood Description   Subject's market area consist of older ranch style homes of average to good condition. Homes in the high range are typically 1300-1750 sq/ft. offer 3-5 bedrooms with 2-4 bathrooms and reflect overall good maintenance levels. Homes in the lower range vary between 900-1250 sq/ft. offer 2-3 bedroom with 2-3 bathrooms and reflect overall average to good condition.
Market Conditions (including support for the above conclusions)   Year over year sales indicate that property values remain stable after a period of decline. Month over month sales for the prior two quarters suggest stable to slight increases in value. Factors include low inventory levels, multiple offers, higher list/price ratios, favorable interest rates and shorter marketing time.

| | | | |
|---|---|---|---|
| Dimensions please see attached plat map. | Area 6,350 | Shape rectangle | View none |
| Specific Zoning Classification R 1 | Zoning Description Single Family Use |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes  ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | | Alley none | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone C   FEMA Map # 0604170020C   FEMA Map Date 10/15/1985
Are the utilities and off-site improvements typical for the market area?  ☒ Yes  ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes  ☒ No If Yes, describe

| General Description | | Foundation | | Exterior Description  materials/condition | | Interior  materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls treated wood/avg | | Floors carpt/tile/average | |
| # of Stories 1 | ☐ Full Basement ☐ Partial Basement | | Exterior Walls stucco/average | | Walls drywall/average | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area sq.ft. | | Roof Surface comp. shingle/avg | | Trim/Finish wood/average | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | | Gutters & Downspouts aluminum/average | | Bath Floor tile/average | |
| Design (Style) ranch | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type dual pane/average | | Bath Wainscot tile/average | |
| Year Built 1964 | Evidence of ☐ Infestation none noted | | Storm Sash/Insulated n/a | | Car Storage ☐ None | |
| Effective Age (Yrs) 30 | ☐ Dampness ☐ Settlement | | Screens screens/average+ | | ☒ Driveway # of Cars 2 | |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface poured concrete | |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel gas | | ☒ Fireplace(s) # 1 ☒ Fence wood | | ☒ Garage # of Cars 2 | |
| ☐ Floor ☒ Scuttle | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck open ☒ Porch none | | ☐ Carport # of Cars | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | | ☐ Pool ☐ Other none | | ☒ Att. ☐ Det. ☐ Built-In | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:   6 Rooms   4 Bedrooms   3 Bath(s)   1725 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).   No special energy efficient items noted.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   Subject property was in overall average condition at time of inspection. Subject has been updated throughout the years offering a lower effective age. All mechanical systems were examined and appeared to be in working order. No functional/external obsolescence noted. No readily observable repair items or hazards were noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes  ☐ No If No, describe

# Uniform Residential Appraisal Report
File #

| | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|

There are **6** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 250,000 to $ 310,000
There are **22** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 240,000 to $ 305,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 3550 Madera place | 3231 Merced place | | 3320 Merced place | | 3130 Eden street | |
| | Oxnard, Ca. 93033 | Oxnard, Ca. 93033 | | Oxnard, Ca. 93030 | | Oxnard, Ca. 93033 | |
| Proximity to Subject | | 0.19 miles NW | | 0.15 miles NW | | 0.39 miles NW | |
| Sale Price | $ | $ 265,000 | | $ 250,000 | | $ 300,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 155.43 sq.ft. | | $ 145.01 sq.ft. | | $ 160.77 sq.ft. | |
| Data Source(s) | | MLS/FARES | | MLS/FARES | | MLS/FARES | |
| Verification Source(s) | | Doc# 194169 | | Doc# 177502 | | Doc# 158087 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | conventional | 0 | FHA | 0 | conventional | 0 |
| Concessions | | typical | | typical | | typical | |
| Date of Sale/Time | | 12/02/2009 | 0 | 10/30/2009 | 0 | 09/23/2009 | 0 |
| Location | average | average | 0 | average | 0 | average+ | -10,000 |
| Leasehold/Fee Simple | Fee Simple | fee simple | 0 | fee simple | 0 | fee simple | 0 |
| Site | 6,350 | 6150 | 0 | 7900 | 0 | 6000 | 0 |
| View | none | none | 0 | none | 0 | none | 0 |
| Design (Style) | ranch | ranch | 0 | ranch | 0 | ranch | 0 |
| Quality of Construction | average | average | 0 | average | 0 | average | 0 |
| Actual Age | 46 | 49 | 0 | 49 | 0 | 31 | 0 |
| Condition | average | average | 0 | average- | +10,000 | good | -20,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | 0 | Total / Bdrms. / Baths | +10,000 | Total / Bdrms. / Baths | -10,000 |
| Room Count | 6 / 4 / 3 | 6 / 3 / 2 | 0 | 7 / 3 / 3 | 0 | 7 / 4 / 2.5 | +5,000 |
| Gross Living Area | 1725 sq.ft. | 1705 sq.ft. | 0 | 1724 sq.ft. | 0 | 1866 sq.ft. | 0 |
| Basement & Finished | | N/A | 0 | N/A | 0 | N/A | 0 |
| Rooms Below Grade | 0 | N/A | 0 | N/A | 0 | N/A | 0 |
| Functional Utility | typical | typical | 0 | typical | 0 | typical | 0 |
| Heating/Cooling | FAU/none | FAU/none | 0 | FAU/none | 0 | FAU/none | 0 |
| Energy Efficient Items | none noted | none noted | 0 | none noted | 0 | none noted | 0 |
| Garage/Carport | 2 garage | 2 garage | 0 | 2 garage | 0 | 2 garage | 0 |
| Porch/Patio/Deck | porch,patio | porch,patio | 0 | porch,patio | 0 | porch,patio | 0 |
| pool/spa | none | none | 0 | none | 0 | none | 0 |
| Net Adjustment (Total) | | ☐ + ☐ - $ | | ☒ + ☐ - $ 20,000 | | ☐ + ☒ - $ -35,000 | |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. 8.0 % | | Net Adj. 11.7 % | |
| of Comparables | | Gross Adj. % $ 265,000 | | Gross Adj. 8.0 % $ 270,000 | | Gross Adj. 15.0 % $ 265,000 | |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MLS/FARES
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   MLS/FARES
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | none | none | none | none |
| Price of Prior Sale/Transfer | none | none | none | none |
| Data Source(s) | none | none | none | none |
| Effective Date of Data Source(s) | 02/10/2010 | 02/10/2010 | 02/10/2010 | 02/10/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Per MLS/FARES.

Summary of Sales Comparison Approach   Comps offer similar quality, utility age and appeal. Comp 3 is located on a quite interior street offering greater privacy and appeal; market data supports the adjustments for difference in superior location. Condition adjustment per broker comments and curb inspection. Market data supports adjustments given for differences in bedroom/bath count. Comparables 1-3 are closed verified sales and deemed best available for final market estimate.

Indicated Value by Sales Comparison Approach $  265,000
Indicated Value by: Sales Comparison Approach $  265,000   Cost Approach (if developed) $  275,028   Income Approach (if developed) $  n/d
The market approach best reflects the reactions of typical buyers and sellers and thus given primary weight. Due to the inability to accurately calculate depreciaiton and the lack of land sales, the cost approach was given only secondary consideration. Since subject is not utilized as income producing property, the income capitalization approach was not applied.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  265,000  , as of  02/10/2010  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005   Page 2 of 6   Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report    File #

**ADDITIONAL COMMENTS**

-This report is intended only to determine the market value for use in a civil matter. This report is not intended for a mortgage transaction or any other use.

-This report is intended for use only by the client (as stated on this report) and the presiding Judge. Use of this report by others is not intended by the appraiser.

-This report does not contain a sketch of the subject property as stipulated by #2 of the statement of assumptions and limiting conditions on page 4 of this report.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Land sales are extremely limited in this market area. Abstraction method was used to determine subject's land value.

| COST APPROACH | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 135,000 |
| Source of cost data  Marshall & Swift/Local Contractor information | DWELLING | 1725 Sq.Ft. @ $ | 95.00 | =$ | 163,875 |
| Quality rating from cost service  good    Effective date of cost data  11/29/2009 | | Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | pool | | | =$ | 20,000 |
| Economic age/life method applied to determine depreciation of | Garage/Carport | 462 Sq.Ft. @ $ | 35.00 | =$ | 16,170 |
| improvements. Land to improvement ratio is typical for area. | Total Estimate of Cost-New | | | =$ | 200,045 |
| | Less    Physical | Functional | External | | |
| | Depreciation    75,017 | | | =$( | 75,017) |
| | Depreciated Cost of Improvements | | | =$ | 125,028 |
| | *As-Is* Value of Site Improvements | | | =$ | 15,000 |
| Estimated Remaining Economic Life (HUD and VA only)    50 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 275,028 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | |
|---|---|
| Estimated Monthly Market Rent $    N/A    X Gross Rent Multiplier    0.00    = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units    n/a | Total number of units sold |
| Total number of units rented | Total number of units for sale    n/a | Data source(s) |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes | | ☐ No  If Yes, date of conversion. |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source | | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes | | ☐ No  If No, describe the status of completion. |

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.    n/a

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report     File #

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report    File #

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report    File #

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    RICHARD R. HERRERA | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Richard R. Herrera | Name |
| Company Name  RICHARD R. HERRERA | Company Name |
| Company Address | Company Address |
| 1264 Indio drive, Oxnard, Ca. 93030 | |
| Telephone Number  805-368-1997 | Telephone Number |
| Email Address  HERRERA370@AOL.COM | Email Address |
| Date of Signature and Report    February 11, 2010 | Date of Signature |
| Effective Date of Appraisal    02/10/2010 | State Certification # |
| State Certification #  AR028783 | or State License # |
| or State License # | State |
| or Other (describe)  n/a          State # n/a | Expiration Date of Certification or License |
| State  California | |
| Expiration Date of Certification or License    03/10/2010 | SUBJECT PROPERTY |

| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
|---|---|
| 3550 Madera place | ☐ Did inspect exterior of subject property from street |
| Oxnard, Ca. 93033 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $    265,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection |
| Name | |
| Company Name  n/a | COMPARABLE SALES |
| Company Address  n/a, na/, n/a | |
| | ☐ Did not inspect exterior of comparable sales from street |
| Email Address | ☐ Did inspect exterior of comparable sales from street |
| | Date of Inspection |

### Subject Photo Page

| | |
|---|---|
| Borrower/Client | n/a |
| Property Address | 3550 Madera place |
| City | Oxnard | County | Ventura | State | Ca. | Zip Code | 93033 |
| Lender | n/a |



**Subject Front**

3550 Madera place
Sales Price
Gross Living Area          1725
Total Rooms          6
Total Bedrooms          4
Total Bathrooms          3
Location          average
View          none
Site          6,350
Quality          average
Age          46



**Subject Rear**



**Subject Street**

## Subject Interior Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | n/a | | | | |
| Property Address | 3550 Madera place | | | | |
| City | Oxnard | County Ventura | State Ca. | Zip Code 93033 | |
| Lender | n/a | | | | |



**Subject Interior**

3550 Madera place
Sales Price
Gross Living Area          1725
Total Rooms            6
Total Bedrooms         4
Total Bathrooms        3
Location            average
View                none
Site                6,350
Quality             average
Age                 46



**Subject Interior**



**Subject Interior**

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | n/a |
| Property Address | 3550 Madera place |
| City | Oxnard | County Ventura | State Ca. | Zip Code 93033 |
| Lender | n/a |



### Comparable 1
3231 Merced place
| | |
|---|---|
| Prox. to Subject | 0.19 miles NW |
| Sale Price | 265,000 |
| Gross Living Area | 1705 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | average |
| View | none |
| Site | 6150 |
| Quality | average |
| Age | 49 |



### Comparable 2
3320 Merced place
| | |
|---|---|
| Prox. to Subject | 0.15 miles NW |
| Sale Price | 250,000 |
| Gross Living Area | 1724 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | average |
| View | none |
| Site | 7900 |
| Quality | average |
| Age | 49 |



### Comparable 3
3130 Eden street
| | |
|---|---|
| Prox. to Subject | 0.39 miles NW |
| Sale Price | 300,000 |
| Gross Living Area | 1866 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | average+ |
| View | none |
| Site | 6000 |
| Quality | average |
| Age | 31 |

### Location Map

| Borrower/Client | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3550 Madera place | | | | | | |
| City | Oxnard | | County | Ventura | State | Ca. | Zip Code | 93033 |
| Lender | n/a | | | | | | |



File No. | Page #11

## Plat Map

| Borrower/Client | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 3550 Madera place | | | | |
| City | Oxnard | County | Ventura | State Ca. | Zip Code 93033 |
| Lender | n/a | | | | |



Form MAP.PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**<u>EXHIBIT  4</u>**

# IndyMac Mortgage Services, a division of OneWest Bank, FSB

Primary Phone Number: (805) 488-2706
Secondary Phone Number: (213) 612-8425

**Property Address:** 3550 MADERA PL,
OXNARD, CA 93033

045781 RE 1

#BWNDXCT
#6686947657001020#

JAIME MORALES
3550 Madera Place
OXNARD CA 93033-5750

| Account Information | |
|---|---|
| Account Information as of | 02/18/10 |
| Loan Number | 1007567496 |
| Interest Rate | 5.122% |
| Principal Balance | $420,522.75 |
| Escrow Balance | $413.07- |
| Unapplied Funds | $31.55 |
| Funds Advanced by IMS (1,2) | $2,658.16 |
| Principal Paid YTD | $533.39- |
| Interest Paid YTD | $1,873.15 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $776.44 |

**For statement questions,
please call Customer Service at
1.800.781.7399**

## Payment Information

### 03/01/10 Payment Options

| | Minimum (A) | Interest Only (B) | Fully Amortized (C) | 15 Yr Amortized (C) |
|---|---|---|---|---|
| Principal and/or Interest | $1,440.24 | Not applicable | Not applicable | Not applicable |
| Escrow | $322.78 | | | |
| Optional Products (2) | $ .00 | | | |
| Other (2) | $ .00 | | | |
| **Payment Amount** | $1,763.02 | | | |
| Past Due Payment(s) | $23,472.50 | | | |
| Total Payments Due | $25,235.52 | | | |
| Unpaid Late Charges | $767.01 | | | |
| Returned Payment Fees | $ .00 | | | |
| Other Unpaid Charges (2) | $ .00 | | | |
| Funds Advanced by IMS (1,2) | $2,658.16 | | | |
| **Total Amount Due** | $28,660.69 | | | |
| After 03/16/10 please pay: (3) | $28,732.70 | | | |

**Your Account is
Past Due.**

### Additional Information

1. Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.
2. Itemized detail available upon request.
3. Payment calculation includes Late Charge fee.

### Transactions Since Last Statement

| Date | Transaction | Total | Principal/Deferred Interest (D) | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 02/16/10 | Fee Assessment | | | | | 72.01- |
| 01/13 | Haz Ins Disb | 776.44- | FARMERS INSURANCE | | 776.44- | |
| 01/12/10 | Funds Applied | | 533.39- | 1,873.15 | 584.55 | 1,924.31- |
| 01/11/10 | Funds Applied | 1,955.86 | | | | 1,955.86 |

## Important Messages

**INCOME TAX SEASON IS RIGHT AROUND THE CORNER!**
Did you know that you can access your 1098 Interest Statement via the OneWest Bank website? To learn when your 1098 Interest Statement for 2009 will be available and how to access it on our website, turn over this statement.

**(A) Minimum P&I Payment** This is the minimum amount that must be paid. As the interest rate may change monthly, this "minimum" payment may not be enough to pay all of the monthly interest due. If this occurs, the unpaid interest is then added to your loan balance.

**(B) Interest Only Payment** Payment applied only to interest due for month. No funds are included to reduce the loan's principal balance. Payment option is only available if the interest only amount due is at least as much as the minimum payment amount due.

**(C) Fully or 15-Year Amortized Payment** The principal and interest due. It is calculated using the current interest (determined by adding index plus margin) and the balance over the remaining term of the loan.

**(D) Principal/Deferred Interest** Positive amounts in this section mean the loan balance has decreased. Negative amounts in this section mean the monthly interest due was not satisfied with the last payment resulting in an increased loan balance.

---

Detach this portion and return with your check made payable to IndyMac Mortgage Services. Please write your loan number on your check.

## IndyMac Mortgage Services, a division of OneWest Bank, FSB™

Payments will be applied in the order specified in your mortgage documents.
If sending additional funds, please indicate below how to apply funds.

### Payment Summary

JAIME MORALES                    Loan Number 1007567496

03/01/09 Payment Information

| Payment Options: | Minimum Payment | Interest Only | Fully Amortized | 15-Year Amortized |
|---|---|---|---|---|
| **Total Payments Due** | $25,235.52 | N/A | N/A | N/A |
| After 03/16/10 | $25,307.53 | | | |
| **Total Amount Due:** | $28,660.69 | | | |
| After 03/16/10 | $28,732.70 | | | |

+ Additional Principal: $ _____
+ Additional Escrow: $ _____
+ Late Charges/Fees: $ _____
+ Other: $ _____
= Total Amount Enclosed: $ _____

☐ Check this box if name, mailing address, or telephone number have recently changed. Please complete form on the reverse side.

INDYMAC MORTGAGE SERVICES
PO BOX 78826
PHOENIX AZ 85062-8826

1007567496    02866069    02873270    3

| In re:  Morales, Jaime | | CHAPTER: 13 |
| --- | --- | --- |
| | Debtor(s). | CASE NUMBER: 10-10784 |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

342  W. 5th St.
Oxnard, CA 93030

A true and correct copy of the foregoing document described as  Complaint                                                          
                                                                          will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On  3/30/10                       I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

 lrojas@ch13wla.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  12/2/09                       I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge Robin L. Riblet
U S Bankruptcy Court - Central Dist. California, Northern Division
1415 State Street   Courtroom 201
Santa Barbara, CA 93101-2511

☑ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on                              I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/1/10 | Geoffrey Mason Ely | |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9013-3.1**

| In re: Morales, Jaime | CHAPTER: 13 |
| Debtor(s). | CASE NUMBER: 10-10784 |

**ADDITIONAL SERVICE INFORMATION (if needed):**

Terry Laughlin, CEO & President
INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB
888 East Walnut Street
Pasadena, CA 91101

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                        **F 9013-3.1**